

# North Carolina
## DEPARTMENT OF INSURANCE          *Wayne Goodwin | Commissioner of Insurance*

### SERVICE OF PROCESS

June 27, 2016

Mr. R. Gene Edmundson
Post Office Box 428
106 Main Street
Oxford, NC 27565

        **Paula K. Bullock**
           vs.
        **United Property & Casualty Insurance Company**

Dear Mr. Edmundson:

This acknowledges receipt of legal process in the referenced matter by a special deputy, duly appointed by me for such purpose. We are herewith enclosing the Department's **receipt #46156** in the amount of $10.00 for Service of Process, which was mailed on June 27, 2016.

The process papers have been forwarded to the named insurance company.

        WAYNE GOODWIN
        Commissioner of Insurance

        *Gloria H. Glasco*

        Gloria H. Glasco
        Special Deputy for
        Service of Process

Enclosure

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 1 of 74

# North Carolina
## DEPARTMENT OF INSURANCE

*Wayne Goodwin | Commissioner of Insurance*

### SERVICE OF PROCESS

Paula K. Bullock

    vs.

United Property & Casualty Insurance Company

I, Gloria H. Glasco, a Special Deputy duly appointed for the purpose, do hereby accept service of the **Civil Summons** of Plaintiff Paula K. Bullock and adding United Property & Casualty Insurance Company as a Defendant, and acknowledge receipt of a copy of the same, together with a copy of the **Complaint with attached Exhibit "A", "B", and "C"**, under the provision of the North Carolina General Statute Section 58-16-30 as process agent for United Property & Casualty Insurance Company.

This the 24th day of June, 2016.

                     WAYNE GOODWIN
                     Commissioner of Insurance

                     *Gloria H. Glasco*

                     Gloria H. Glasco
                     Special Deputy for
                     Service of Process

0196937979 EDMUNDSON & burnette

Nº 46156

**STATE OF NORTH CAROLINA**
**INSURANCE DEPARTMENT**
RALEIGH, 24 June 2016

RECEIVED of _Edmundson & Burnette LLP Attys Atlas opin deang_
as Deposit Fee for service under Sec. 58-16-30 of the General Statutes of North Carolina, in suit
_Paula K. Bullock_ _____ Plaintiff _____, against
_United Property & Casualty Insurance Comp_ Defendant _____. **TEN DOLLARS**
   The process in said suit being issued from _____ _Caswell_ _____ County,
a copy of which is deposited with this Department and a certified copy mailed, postage prepaid, to the
Company, as provided by law.

Date Served _21 June 2016_          _G. Wayne Goodwin_
                                    _Insurance Commissioner_

$10.00 Ck # 13114     FILE NO. _IN-16-0078 2(SP)_

| STATE OF NORTH CAROLINA | ▶ File No. 16-CVS-170 |
|---|---|

CASWELL County

In The General Court of Justice
☐ District ☒ Superior Court Division

**CIVIL SUMMONS**

☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

G.S. 1A-1, Rules 3, 4

*Name of Plaintiff*
Paula K. Bullock
*Address*
732 Osmond Road
*City, State, Zip*
Semora, North Carolina 27343

**VERSUS**

*Name of Defendant(s)*
United Property & Casualty Insurance Company
d/b/a UPC Insurance

*Date Original Summons Issued*

*Date(s) Subsequent Summon(es) Issued*

**To Each of The Defendant(s) Named Below:**

*Name And Address of Defendant 1*
United Property & Casualty Insurance Company
  d/b/a UPC Insurance
Registered Agent
Chief Financial Officer: Bennet B. Martz
200 E. Gaines Street
Tallahassee, Florida 32399-0000

*Name And Address of Defendant 2*

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address of Plaintiff's Attorney (If None, Address of Plaintiff)*<br>R. Gene Edmundson<br>P. O. Box 428<br>106 Main Street<br>Oxford, North Carolina 27565 | *Date Issued* 6-9-16 | *Time* 11:56 ☒ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk of Superior Court | |

| ☐ **ENDORSEMENT (ASSESS FEE)** | *Date of Endorsement* | *Time* ☐ AM ☐ PM |
|---|---|---|
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Signature* | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk of Superior Court | |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $15,000 or less is heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

AOC-CV-100, Rev. 6/11
© 2011 Administrative Office of the Courts

(Over)

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 4 of 74

STATE OF NORTH CAROLINA FILED          FILE NO. 16-CVS-170

                                       FILM NO. _____
COUNTY OF CASWELL  16 JUN -9 AM 11:57

                        IN THE GENERAL COURT OF JUSTICE
          CASWELL COUNTY. C.S.C.  SUPERIOR COURT DIVISION

PAULA K. BULLOCK,      BY_____ )   apd
          Plaintiff          )
                             )
     v.                      )          **COMPLAINT**
                             )
UNITED PROPERTY &            )
CASUALTY INSURANCE           )
COMPANY d/b/a                )
UPC INSURANCE,               )
          Defendant          )


        Plaintiff, Paula K. Bullock, being duly sworn, deposes,
says, and alleges of Defendant, UPC Insurance:

                              **PARTIES**

        1. That Plaintiff is, and at all times relevant hereto has
been, a citizen and resident of Caswell County, North Carolina.

        2. That Defendant United Property & Casualty Insurance
Company, d/b/a UPC Insurance ("UPC") is, upon information and
belief, and at all times relevant hereto has been, a corporation
organized and existing under the laws of the State of Florida
with its principal place of business in St. Petersburg, Florida.

        3. That at all times relevant hereto, UPC has been
authorized to sell and issue insurance policies in the State of
North Carolina.

## JURISDICTION AND VENUE

4. Subject matter jurisdiction over this case is conferred upon this Court pursuant to N.C.G.S. §1-75.4.

5. Venue for this cause is properly laid in this Court pursuant to N.C.G.S. §§1-79 and 1-80.

## FACTS

6. That in January, 2015, and at all relevant times hereto, Plaintiff was covered for property, casualty and liability risks under a policy of insurance ("the policy") which Plaintiff purchased from UPC. UPC entered into a contract of insurance with Plaintiff and issued the policy in effect for the period 02/04/2014 through 02/04/15 under Policy Number UNH 0063322 00 32.

7. That the policy covered, among other things, Plaintiff's dwelling and residence at 732 Osmond Road, Semora, North Carolina 27343 ("the residence"). (A copy of the policy is attached and incorporated by reference as Exhibit "A".)

8. That in January, 2015, Plaintiff was away from her residence on a trip.

9. That before she left on her trip, Plaintiff set the thermostat within the residence at sixty-five degrees Fahrenheit to insure that heat would continue to be dispersed throughout the residence during her absence.

2

10. That while Plaintiff was away, the temperatures in Caswell County during January, 2015, dropped precipitously, below freezing.

11. That, upon information and belief, this weather pattern persisted for many consecutive days.

12. That, on or about January 10, 2015, because of the freezing weather conditions, during Plaintiff's absence, a hot water pipe which conducted water to the residence's kitchen sink froze and burst.

13. That the breakage of the pipe led to a catastrophic intrusion of water into the residence.

14. That the damage caused directly by the water intrusion into the residence included, but was not limited to: "cupping", buckling and warping the hardwood floors; subfloor warping; ruined plumbing, electrical and ductwork systems; drywall and tile destruction; trim destruction; ruined insulation, fixtures, appliances and electronics; and, other damage to the residence to be adduced at trial.

15. That on or about March 12, 2015, Plaintiff's boyfriend, Jon Bemis, was contacted by Patrick Williams ("Williams"), a contractor for Action Restoration Services ("ARS"); Williams suggested that he check on the residence because several houses in the area had suffered broken pipes because of the freezing weather.

3

16. That on or about March 14, 2015, Williams contacted Plaintiff and notified her that the residence was flooded due to a hot water pipe which froze and burst because of the freezing conditions.

17. That on the same day, Plaintiff contacted Mr. Ricky Wright, her insurance agent with Lacy West Insurance in Elizabethtown, North Carolina, the agent from whom she purchased the policy, and notified Mr. Wright of her claims arising from the residence flooding.

18. That on or about March 15, 2015, Williams contacted Plaintiff and notified her that the house was a total loss, but that ARS had begun the mitigation process including tearing out unsalvageable components of the residence, removing the contents therein for storage, and drying out the residence.

19. That on or about March 25, 2015, Plaintiff contacted and spoke with Stephan Louis ("Louis"), a UPC claims adjuster, regarding the policy and her claims thereunder.

20. That Louis assured Plaintiff that temporary housing and cost of living expenses would be covered during the claims investigation process and while the residence was repaired.

21. That on or about March 27, 2015, Louis sent an email to Plaintiff asking her to call him. Louis went on to write that he "need[ed] [Plaintiff's] total expenses to date. . . because [Plaintiff's] policy has a $5,000.00 limit on Fungi, wet

4

or dry rot, or bacteria. [Plaintiff's] home is unlivable because of the mold, so any expense that we will need to pay will have to be done under that limit. I need to know how much of it [Plaintiff] already incurred."

22. That, upon information and belief, at the time Louis sent the email of March 27, 2015, he, and UPC, knew or had reason to know, that the unlivability of the residence was due not from mold, but from direct destruction due to water intrusion from the burst hot water pipe.

23. That on or about March 29, 2015, a field adjuster from UPC met Williams at the property. The field adjuster and Williams had a conversation regarding damage to the residence and the field adjuster commented that the property was a total loss.

24. That in April, 2015, Williams and Louis had multiple phone conversations and Williams provided Louis with an estimate exceeding $250,000.00 for damages to the residence.

25. That in April, 2015, UPC, upon information and belief, sent Plaintiff an "unrestricted" payment of $11,543.29 for water damage to the residence.

26. That on or about May 11, 2015, Plaintiff sent, at the request of Louis, receipts for her hotel stay and a lease for a long-term apartment. This was the second time that Plaintiff had sent such receipts to Louis.

**EDMUNDSON & BURNETTE, LLP ATTORNEYS-AT-LAW**
106 MAIN STREET • POST OFFICE BOX 428 • OXFORD, NORTH CAROLINA 27565 • PHONE: 919-693-7087

27. That, upon information and belief, later in May, 2015, Louis called Plaintiff and stated that UPC would provide only a partial settlement of her claims with approximately $42,000.00 allocated for damage to the residence, remediation and cost of living expenses. UPC's bases for the $42,000.00 figure was that the damage was allegedly primarily from "mold", "humidity and condensation", and failure to perform "duties after loss" (without identifying the specific duties Plaintiff did not fulfill).

28. That Plaintiff vehemently disagreed with the $42,000.00 settlement proposal, and, pursuant to the terms of the policy, the parties hired independent appraisers to assess the damage caused by the water intrusion into the residence.

29. That in May, 2015, Plaintiff hired Mr. Joe Brennan ("Brennan") as her appraiser under the terms of the policy.

30. That UPC hired Mr. Neil Watts ("Watts") as its appraiser.

31. That the appraisal process lasted through June and July, 2015.

32. That Brennan, upon information and belief, estimated the damage for all claims to be in excess of $350,000.00, including damage to the residence, contents and living expenses. Brennan's estimate was not an appraisal.

**EDMUNDSON & BURNETTE, LLP ATTORNEYS-AT-LAW**
106 MAIN STREET • POST OFFICE BOX 428 • OXFORD, NORTH CAROLINA 27565 • PHONE: 919-693-7087

33.   That   in   August,   2015,   Brennan   was   released   as
Plaintiff's appraiser; Plaintiff then hired Max Christenberry to
conduct  an  appraisal.   Neil  Watts  remained  the  appraiser  for
UPC.

34.   That on November 9, 2015, Watts submitted an appraisal
for building value, amount of loss to dwelling and additional
living expense in the total amount of $151,330.63.   Watts noted
in his appraisal that the personal property/contents claim loss
was an "amount pending".   (A copy of the Watts' appraisal is
attached and incorporated by reference as Exhibit "B".)

35. That on November 16, 2015, Louis acknowledged receipt
of Watts' appraisal amount of $151,330.63, but partially denied
and reduced the value of the claim to an "unrestricted" payment
of $42,349.64, again relying on the "mold" and "humidity and
condensation" as bases for the fractional payment.   In addition,
UPC again claimed that Plaintiff had not fulfilled her "duties
after loss", without specifying which duties Plaintiff had left
unfulfilled.

36.   That,  with  respect  to  the  putative  "humidity  and
condensation" exclusion as a basis to deny coverage, UPC, via
Louis,  included  in  its  correspondence  dated  November  16,  2015,
the following:

> Moreover, our investigation revealed that part of
> your  damages  resulted  from  condensation  and
> humidity.   Your homeowner [*sic*] policy with UPC

**EDMUNDSON & BURNETTE, LLP ATTORNEYS-AT-LAW**
106 MAIN STREET • POST OFFICE BOX 428 • OXFORD, NORTH CAROLINA 27565 • PHONE: 919-693-7087

Insurance Company does not cover losses due to the presence of moisture or condensation of [*sic*] humidity. Since the cause of loss is excluded from your policy, we cannot afford you coverage for that portion of the loss at this time and must respectfully deny that portion of your claim.

37. In support of this language denying coverage caused by condensation and humidity, Louis went on to write:

In your HO 00 03 10 00 as amended by the endorsement HO 32 32 06 10:

**A. *Coverage A - Dwelling And Coverage B - Other Structures***

*1. We insure against direct physical loss to property described in Coverages A and B.*

*2. We do not insure, however, for loss:*

*5. Constant or repeated discharge, seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years;*

38. UPC's description of the endorsement as set forth in Louis' letter mischaracterizes, deceitfully, the "condensation and humidity" exclusion.

39. The exclusion clearly applies only **"*over a period of weeks, months or years"*.** (Emphasis added.)

40. Upon information and belief, whatever damage to the residence caused by "the presence or condensation of humidity, moisture or vapor" occurred within *days* of the burst hot water pipe.

8

41. Characterization of this portion of the endorsement as a blanket exclusion of condensation, humidity, moisture or vapor damage is a deliberate misrepresentation of the terms and conditions of the policy.

42. That, in December, 2015, Plaintiff consulted counsel's advice on her claims.

43. That, even after Plaintiff's counsel became involved, UPC continued to hold, unfairly, deceitfully, and without justification, the position that its exposure was limited to $42,349.34 for the residence damage and living expenses because the loss was due to other reasons and not direct water intrusion.

44. That on January 4, 2016, Neil Watts, UPC's appraiser, and Max Christenberry, Plaintiff's appraiser, rendered a replacement cost partial appraisal award of $203,320.42. (A copy is attached and incorporated by reference as Exhibit "C".)

45. That even after this appraisal award, determined by Plaintiff's and UPC's appraisers, UPC continued to deny proper settlement unfairly, deceitfully, without justification and in bad faith.

46. That the January 4, 2016, partial appraisal award included a partial award of $51,989.79 for loss of personal property.

9

47. That on January 29, 2016, UPC submitted an "unrestricted" payment of $20,519.82 for the loss of personal property claim.

48. That UPC relied again on the putative mold cap and the putative humidity/condensation exclusion, and also the allegation that Plaintiff had not met her "duties after loss" (without specifying which duty she failed to discharge) to justify settlement of the personal property claim for a fraction of the appraised loss value.

49. That, upon information and belief, the damage caused to the personal property was overwhelmingly directly caused by the water intrusion, not mold or humidity/condensation.

## FIRST CAUSE OF ACTION – BREACH OF CONTRACT

50. Plaintiff hereby realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

51. That UPC entered into a binding contract of insurance with Plaintiff.

52. That Plaintiff has timely paid all premiums billed to her and otherwise fully performed each and every contractual and other obligation which she is under with regard to the above-referenced insurance contract.

**EDMUNDSON & BURNETTE, LLP ATTORNEYS-AT-LAW**
106 MAIN STREET • POST OFFICE BOX 428 • OXFORD, NORTH CAROLINA 27565 • PHONE: 919-693-7087

53. That, however, to date, UPC has accepted coverage and otherwise tendered payment to Plaintiff with respect to only a fraction of the dwelling/residence loss, cost of living expenses and personal property/contents loss, despite Plaintiff having presented to UPC competent evidence that she had suffered losses far in excess of the amounts tendered by UPC.

54. That, therefore, UPC has breached said contract in refusing to tender full payment of residence/dwelling coverage limits, cost of living expenses, and personal property/contents loss.

55. That as a result of UPC's breach of contract, Plaintiff has suffered damages including, but not limited to: money damages because of insufficient funds to pay for the remediation, renovation and restoration of her residence; insufficient funds to pay for the living expenses because of the unlivability of her residence; and insufficient funds to replace her ruined items of personal property and contents. These insufficient funds are directly due to UPC's willful and deceitful failure to pay for Plaintiff's damages under the terms of the contract of insurance.

56. That because of said breach Plaintiff is entitled to compensatory and other consequential damages in an amount in excess of Ten Thousand Dollars ($10,000.000), plus interest from the date of UPC's breach.

11

## SECOND CAUSE OF ACTION – BAD FAITH

57.   Plaintiff   hereby   realleges   and   incorporates   by reference the preceding paragraphs of this Complaint as though fully set forth herein.

58. That UPC has a statutory and common law duty to process and settle Plaintiff's insurance contract claims in good faith.

59. That UPC's conduct, as alleged in this Complaint, by entering into an insurance contract with Plaintiff and accepting Plaintiff's payment of premiums on such insurance contract, and thereafter refusing to provide coverage and payment pursuant to the terms of said insurance contract, was in bad faith, as it was an abuse of the power and authority which accompanied UPC's superior   bargaining   position   relative   to   Plaintiff   in   the insurance sales and claim context.

60. Furthermore, UPC's conduct is outrageous, reflecting a reckless and wanton disregard of Plaintiff's rights under her policy.

61. That such conduct by UPC further constitutes willful and intentional bad faith breaches of its covenants of good faith and fair dealing to Plaintiff arising from her contract of insurance with UPC.   Such conduct was carried out in a fashion which was entirely self-serving and without consideration of the detrimental financial consequences to Plaintiff.

**EDMUNDSON & BURNETTE, LLP ATTORNEYS-AT-LAW**
106 MAIN STREET • POST OFFICE BOX 428 • OXFORD, NORTH CAROLINA 27565 • PHONE: 919-693-7087

62. That, further, UPC's refusal to meet its contractual insurance obligations to Plaintiff is, to the extent motivated by UPC's own financial interests, despicable and done by oppression, fraud and malice, with the intent to vex, injure and harass Plaintiff resulting in the reasonable likelihood that UPC's conduct would cause injury to Plaintiff.

63. That this conduct was on all occasions either directly engaged in or affirmed or ratified by UPC's executive officers, with full knowledge of the facts, after a considerable lapse of time for investigation and reflection.

64. That as a direct and proximate result of the above-referenced bad faith conduct and bad faith refusal fully to pay upon Plaintiff's insurance contract by UPC, Plaintiff has incurred incidental, consequential and other compensatory damages in an amount in excess of Ten Thousand Dollars ($10,000.00), and is entitled to punitive damages in an amount in excess of Ten Thousand Dollars ($10,000.00), plus interest from the date of breach.

## THIRD CAUSE OF ACTION – UNFAIR AND DECEPTIVE

## TRADE PRACTICES – N.C. GEN. STAT. §75

65. Plaintiff hereby realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

13

66. That all actions of UPC relevant herein were in or affecting commerce and, more specifically, effectuated the sale of a policy of insurance to Plaintiff.

67. That, upon information and belief, the conduct of UPC as aforesaid mentioned was offensive to established commercial and public policy, and such conduct is substantially injurious to consumers within the meaning of N.C. Gen. Stat. §75-1.1.

68. That, pursuant to N.C. Gen. Stat. §58-63-15(11), UPC's conduct constitutes unfair claims settlement practices that were committed or performed with such frequency as to indicate a general business practice.

69. That, pursuant to N.C. Gen. Stat. §58-63-15(11), UPC committed unfair claims settlement practices in that it misrepresented pertinent facts for insurance policy provisions relating to coverages at issue.

70. That, pursuant to N.C. Gen. Stat. §58-63-15(11), UPC committed unfair claims settlement practices by failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies, including Plaintiff's insurance policy.

71. That, pursuant to N.C. Gen. Stat. §58-63-15(11), UPC's conduct constitutes unfair claims settlement practices in that it refused to pay Plaintiff's claims without conducting a reasonable investigation based upon all available information.

14

72. That, pursuant to N.C. Gen. Stat. §58-63-15(11), UPC's conduct constitutes unfair claims settlement practices in that UPC did not attempt in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.

73. That, pursuant to N.C. Gen. Stat. §58-63-15(11), UPC's conduct constitutes unfair claims settlement practices by compelling Plaintiff (the insured) to institute litigation to recover amounts due under a valid insurance policy by offering substantially less than the amounts ultimately sought to be recovered in actions brought by the insured.

74. That, pursuant to N.C. Gen. Stat. §58-63-15(11), UPC's conduct constitutes unfair claims settlement practices in that UPC has attempted to settle Plaintiff's claims for less than the amount to which a reasonable man would have believed he was entitled.

75. That UPC's conduct of unfair claims settlement practices, pursuant to N.C. Gen. Stat. §58-63-15 *et seq.*, constitute *per se* violations of the Unfair and Deceptive Trade Practices Act pursuant to N.C. Gen. Stat. §75-1.1.

76. That as a direct and proximate result of the above-referenced unfair and deceptive trade practices of UPC, Plaintiff incurred incidental, consequential and other

**EDMUNDSON & BURNETTE, LLP ATTORNEYS-AT-LAW**
106 MAIN STREET • POST OFFICE BOX 428 • OXFORD, NORTH CAROLINA 27565 • PHONE: 919-693-7087

compensatory damages in an amount in excess of Ten Thousand Dollars ($10,000.00) plus interest.

77. That, further, given the intentionally fraudulent conduct of UPC, Plaintiff is entitled to have her compensatory damages trebled and to recover her reasonable attorney's fees pursuant to Chapter 75 of the North Carolina General Statutes.

WHEREFORE, Plaintiff prays the Court as follows:

1. That this verified Complaint be treated as an affidavit in support of all further orders of the Court.

2. That Plaintiff be awarded compensatory damages for breach of contract in an amount in excess of Ten Thousand Dollars ($10,000.00).

3. That Plaintiff be awarded punitive damages in an amount according to proof, or in the alternative, for treble damages pursuant to N.C. Gen. Stat. §75.

4. That the costs of this action be taxed against Defendant.

5. That Plaintiff be awarded attorney's fees.

6. That Plaintiff be awarded interest according to proof.

**EDMUNDSON & BURNETTE, LLP ATTORNEYS-AT-LAW**
106 MAIN STREET • POST OFFICE BOX 428 • OXFORD, NORTH CAROLINA 27565 • PHONE: 919-693-7087

7. For all and such other and further relief as the Court deems just and proper.

This the ___1st___ day of June, 2016.

EDMUNDSON & BURNETTE, L.L.P.

R. Gene Edmundson by J20, III

R. Gene Edmundson
Attorney For Plaintiff
P. O. Box 428
106 Main Street
Oxford, NC    27565
(919) 693-7087

17

NORTH CAROLINA

GRANVILLE COUNTY

## VERIFICATION

I, Paula K. Bullock, Plaintiff, in the above-entitled action, first being duly sworn, deposes and says that she has read the foregoing and hereto annexed Complaint, that the same is true to the best of her knowledge, except as to those matters therein alleged upon information and belief, and to those matters, she believes them to be true.

This the 24 day of May, 2016.

_____
Paula K. Bullock

Sworn and subscribed
before me, this the 24
day of May, 2016.

Terri A Richards
Notary Public

My commission expires: 10/20/20

```
┌─────────────────────────────────┐
│      TERRI A RICHARDS           │
│ Notary Public, North Carolina   │
│        Wake County              │
│    My Commission Expires        │
│      October 20, 2020           │
└─────────────────────────────────┘
```

**EDMUNDSON & BURNETTE, LLP ATTORNEYS-AT-LAW**
106 MAIN STREET • POST OFFICE BOX 428 • OXFORD, NORTH CAROLINA 27565 • PHONE: 919-693-7087



COACHES CASUALTY INS OF NC INC
DBA LACY WEST INSURANCE
PO BOX 2138
ELIZABETHTOWN NC  28337


PAULA BULLOCK
732 OSMOND RD
SEMORA NC 27343


## IMPORTANT INFORMATION RELATED TO YOUR POLICY

Policy No: **UNH 0063322 00**

**To answer questions about your policy, coverage and payment obligation, your
best source of information is your local insurance agent.**

The agent responsible for servicing your policy is:

COACHES CASUALTY INS OF NC INC
DBA LACY WEST INSURANCE
PO BOX 2138
ELIZABETHTOWN NC  28337
910-862-4156

**To check Policy and/or billing information 24 hours a day, use our Automated Response
System:**

Call 1-800-295-8016 for up-to-date information concerning your policy.

Please have your policy number available when making this call.

To Make Payments:

**Use the stub on your invoice and the envelope provided and mail to:**

United  Property & Casualty Insurance Company
Payment Processing Center
P. O.  Box 31512
Tampa, FL 33631-3512


**To Report a Claim:**

**You may call us 24 hours a day at 1-(888) CLM DEPT/1-(888)-256-3378.**

Or

**You may report a claim to your agent at the address and phone number above.**

**Office Hours: 8:00am to 5:00pm (Eastern Time), Monday through Friday, except Holidays**

**HOMEOWNERS**

| POLICY NUMBER | POLICY PERIOD From To |
|---|---|
| UNH 0063322 00 32 | 02/04/2014    02/04/2015 12:01 am Eastern Standard Time at the mailing address shown below |

INSURED COPY

Date Issued: 02/06/2014

**INSURED:**

PAULA BULLOCK
732 OSMOND RD
SEMORA NC 27343

**Telephone:** 910-862-4156

**AGENT:** 8400100

COACHES CASUALTY INS OF NC INC
DBA LACY WEST INSURANCE
PO BOX 2138
ELIZABETHTOWN NC  28337

**Telephone:** 910-862-4156

**Property Address:** 732 OSMOND RD          SEMORA NC 27343

**This is a Bill**

| INST | DATE | TRANSACTION | AMOUNT |
|---|---|---|---|
| 01 | 02/05/2014 | New Business | $456.50 |
|  | 02/05/2014 | Service Charge | $3.00 |
|  |  | -- Next Installment Due -- (service charge not included) |  |
| 02 | 04/05/2014 | $    456.50 |  |

|  |  |  |  |
|---|---|---|---|
| AMOUNT DUE: |  | $ | 459.50 |
| PAYMENT DUE | UPON RECEIPT |  |  |
| POLICY BALANCE |  | $ | 1,829.00 |

P R E M I U M   N O T I C E - I N S U R E D
Please mail payment to the address below or to make an electronic payment,
log onto www.upcinsurance.com.

******DETACH HERE******
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
***********DO NOT PHOTOCOPY************

Payment must be received on or before due date to avoid cancellation.
For any billing questions, please call 800-295-8016. If you have
questions concerning your coverage, please contact your agent listed above.

POLICY NUMBER:
UNH  0063322   00  00  32  8400100

PAULA BULLOCK
732 OSMOND RD
SEMORA NC 27343

AMOUNT DUE NOW               **$459.50**

LOAN NUMBER:
PLEASE REMIT PAYMENT TO:

UPC Insurance
P.O. Box 31512
Tampa, FL          33631-3512

UPC0032UNH0063322000204140204140000459508



02/05/2014

PAULA BULLOCK
732 OSMOND RD
SEMORA NC 27343

Policy #    UNH 0063322 00 32

**Welcome to UPC Insurance**

Dear New UPC Customer:

Enclosed is your new UPC Homeowners Policy. All of us at UPC Insurance want to welcome you to our family of policyholders.

UPC's corporate office is located in St. Petersburg, Florida. Our company has achieved a position of leadership in the homeowners insurance market through a clearly defined vision, innovative and focused growth, competitive rates and excellent service to our customers.

To make certain that the homes we insure meet our underwriting guidelines, UPC inspects the majority of all new homeowner policies. If your policy is one of the risks selected, a home inspector will be visiting your property soon to measure square footage and make sure that there are no safety hazards that need to be corrected. The inspection is only for the outside of your home (unless your home contains a wood-burning/pellet stove – if so, we will need to inspect the stove also), and the inspector will present proper identification. The inspection report will then be sent to your insurance agent and if there are any recommendations, your agent will contact you.

**Please find the bill enclosed within this new business packet, unless the premium is paid through an escrow account.**

UPC is dedicated to providing you with outstanding service. Should you have a claim, please contact us on our toll free claim number, 1-800-861-4370, or if you prefer, you can report your claim online through our website at www.upcinsurance.com. Should you want to change your policy in any way, all you need to do is contact your agent who will be glad to help you.

Your agent and UPC look forward to assisting you in any way that we can to make certain that your homeowners policy reflects all of your insurance needs. We encourage you to visit our website and learn more about us and we are delighted that you have selected UPC to insure your home.

360 CENTRAL AVENUE, SUITE 900 • ST. PETERSBURG, FL 33701
UNITED PROPERTY & CASUALTY INSURANCE COMPANY
WWW.UPCINSURANCE.COM



## IMPORTANT NOTICE

**WARNING: THIS PROPERTY INSURANCE POLICY DOES NOT PROTECT YOU AGAINST LOSSES FROM FLOODS, EARTHQUAKES, MUDSLIDES, MUDFLOWS, LANDSLIDES. YOU SHOULD CONTACT YOUR INSURANCE COMPANY OR AGENT TO DISCUSS YOUR OPTIONS FOR OBTAINING COVERAGE FOR THESE LOSSES. THIS IS NOT A COMPLETE LISTING OF ALL OF THE CAUSES OF LOSSES NOT COVERED UNDER YOUR POLICY. YOU SHOULD READ YOUR ENTIRE POLICY TO UNDERSTAND WHAT IS COVERED AND WHAT IS NOT COVERED.**

# UPC INSURANCE

**UNITED PROPERTY & CASUALTY INSURANCE CO**
P.O. Box 51149
Sarasota, FL 34232-0330

## HOMEOWNERS DECLARATION

| POLICY NUMBER | POLICY PERIOD | |
|---|---|---|
| | From | To |
| UNH 0063322 00 32 | 02/04/2014 | 02/04/2015 |
| | 12:01 a. m. at the residence premises. | |

| POLICY DECLARATION | Effective: 02/04/2014 | Date Issued: 02/05/2014 |
|---|---|---|

| INSURED: | AGENT: 8400100 |
|---|---|
| PAULA BULLOCK<br>732 OSMOND RD<br>SEMORA NC 27343<br><br>Telephone: 910-862-4156 | COACHES CASUALTY INS OF NC INC<br>DBA LACY WEST INSURANCE<br>PO BOX 2138<br>ELIZABETHTOWN NC 28337<br>Telephone: 910-862-4156 |

The residence premises covered by this policy is located at the address listed below.

| 732 OSMOND RD | SEMORA NC 27343 |
|---|---|

Coverage is provided where premium and limit of liability is shown. Flood coverage is not provided and is not a part of this policy.

| SECTION I COVERAGE | LIMIT OF LIABILITY | PREMIUMS |
|---|---|---|
| A. DWELLING | $425,000.00 | $1,747.00 |
| B. OTHER STRUCTURES | $42,500.00 | INCLUDED |
| C. PERSONAL PROPERTY | $212,500.00 | INCLUDED |
| D. LOSS OF USE | $85,000.00 | INCLUDED |
| SECTION II COVERAGE | | |
| E. PERSONAL LIABILITY | $300,000.00 | $8.00 |
| F. MEDICAL PAYMENTS | $1,000.00 | INCLUDED |
| OPTIONAL COVERAGES | | |

UPC Insurance

"This is a true and certified copy of original Policy issued"

Sign   2-1-16   Date

Continued on Additional Coverages Schedule

The above coverages are subject to a **$2,500** All Other Peril Deductible per non-Windstorm or Hail loss.

The above coverages are subject to a **1% / $4,250** Windstorm or Hail Deductible per Windstorm or Hail loss.

TOTAL POLICY PREMIUM INCLUDING ASSESSMENTS AND ALL SURCHARGES:    $1,826.00

PLEASE CONTACT YOUR AGENT IF THERE ARE ANY QUESTIONS PERTAINING TO YOUR POLICY.

| FORMS AND ENDORSEMENTS | | |
|---|---|---|
| *HO 0003 (10/00) | *HO 0312 (10/00) | COUNTERSIGNED DATE 02/05/2014 |
| *HO 0484 (01/09) | *HO 0490 (10/00) | |
| *HO 3201 (06/05) | *HO 3220 (05/03) | BY   _Julie Lowery_ |
| *HO 3232 (06/10) | *HO 3246 (05/03) | |
| Continued on Forms Schedule | | |
| **ADDITIONAL INTERESTS** | | |

UPC 101 03 99                    INSURED COPY                    Page 1 of 4

# UPC INSURANCE

**UNITED PROPERTY & CASUALTY INS CO**
P.O. Box 51149
Sarasota, FL 34232-0330

## HOMEOWNERS DECLARATION

| POLICY NUMBER | POLICY PERIOD | |
|---|---|---|
| | From | To |
| UNH 0063322 00 32 | 02/04/2014 | 02/04/2015 |
| | 12:01 a.m. at the residence premises. | |

| POLICY DECLARATION | Effective: 02/04/2014 | Date Issued: 02/05/2014 |
|---|---|---|

| INSURED: | AGENT: 8400100 |
|---|---|

PAULA BULLOCK
732 OSMOND RD
SEMORA NC 27343

Telephone: 910-862-4156

COACHES CASUALTY INS OF NC INC
DBA LACY WEST INSURANCE
PO BOX 2138
ELIZABETHTOWN NC 28337
Telephone: 910-862-4156

The residence premises covered by this policy is located at the above insured address unless otherwise stated below:

732 OSMOND RD          SEMORA NC 27343

Premium:

### CREDITS/SURCHARGES:

| | | |
|---|---|---|
| Protective Devices Credit | N/A | |
| Book Transfer | N/A | |
| Companion Credit | N/A | |
| Superior Construction Credit | N/A | |
| Deductible Adjustment | -$538.00 | |
| Claim Free | N/A | |
| Water Loss Prev Credit | N/A | |
| New Purchase Discount | N/A | |
| Claim Surcharge | N/A | |
| Mitigation Credit | N/A | * Included in Base Premium |
| Secured Comm Credit | N/A | |
| Age of Home Credit(Surcharge) | $217.00 | |
| Inflation Guard Premium | N/A | |
| Max Credit (Surcharge) | N/A | |
| Mature Credit | N/A | |
| Prior Ins Credit(Surcharge) | -$103.00 | |
| Hip Roof Credit | N/A | |

TOTAL POLICY PREMIUM INCLUDING ALL SURCHARGES     $1,826.00

************* Additional Information *************

This replaces all previously issued policy declarations, if any. This policy applies to accidents, occurrences, or losses which happen during the policy period shown above. In case of loss under Section I, only that part of loss over the stated deductible applies. The declarations page together with all policy provisions and any other applicable endorsements completes your policy.

| | | | | | |
|---|---|---|---|---|---|
| FLOOD CARRIER | N/A | | | | |
| FORM TYPE | HO-3 | YEAR BUILT | 1975 | TOWN/ROW HOUSE | |
| CONSTRUCT TYPE | F | CONSTRUCT SUPERIOR | N | NUMBER OF FAMILIES | 00001 |
| AOP TERRITORY | 046 | PROTECTION CLASS | 9E | USE CODE | P |
| COUNTY CODE | 017 | PROT DEVICE/BURGLAR | N | PROT DEVICE/FIRE | N |
| PROT DEV/SPRINKLER | N | REPLACEMENT COST | Y | OCCUPANCY CODE | OWNER |
| FLOOD CREDIT | N | INFLATION GUARD | N/A | WATER PREVENTION CR | N |

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 28 of 74

**UPC**
**INSURANCE**
**UNITED PROPERTY & CASUALTY INS CO**
**P.O. Box 51149**
**Sarasota, FL  34232-0330**

| POLICY NUMBER | POLICY PERIOD | |
| --- | --- | --- |
| | From | To |
| UNH 0063322 00 32 | 02/04/2014 | 02/04/2015 |
| | 12:01 a.m. at the residence premises. | |

# ADDITIONAL COVERAGES SCHEDULE
### (continued from page 1)

| Coverage Type | Description | Limit | Premium |
| --- | --- | --- | --- |
| ADD'L AMNT OF INS -3/5 | 25% | | $41.00 |
| EQUIPMENT BREAKDOWN | | $50,000.00 | INCLUDED |
| ID THEFT EXP & RESOL SERV | | $25,000.00 | INCLUDED |
| WATER BACK-UP AND SUMP | | $10,000.00 | $30.00 |

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 29 of 74

| POLICY NUMBER | POLICY PERIOD | |
|---|---|---|
| | From | To |
| UNH 0063322 00 32 | 02/04/2014 12:01 a.m. at the residence premises. | 02/04/2015 |

## FORMS SCHEDULE
### (continued from page 1)

* HO 3296  (05/03)          * ILN 001  (09/03)          * ILP 001  (01/04)          * UPC 424NC (03/12)          * UPCHO207NC(03/13)
* UPCNCCTRHO(04/13)

# HOMEOWNERS 3 – SPECIAL FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

**B.** In addition, certain words and phrases are defined as follows:

**1.** "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in **b.** below, mean the following:

**a.** Liability for "bodily injury" or "property damage" arising out of the:

(1) Ownership of such vehicle or craft by an "insured";

(2) Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

(3) Entrustment of such vehicle or craft by an "insured" to any person;

(4) Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

(5) Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

**b.** For the purpose of this definition:

(1) Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

(2) Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

(3) Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

(4) Motor vehicle means a "motor vehicle" as defined in **7.** below.

**2.** "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

**3.** "Business" means:

**a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

**b.** Any other activity engaged in for money or other compensation, except the following:

(1) One or more activities, not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

(2) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

(3) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

(4) The rendering of home day care services to a relative of an "insured".

**4.** "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

**5.** "Insured" means:

**a.** You and residents of your household who are:

(1) Your relatives; or

(2) Other persons under the age of 21 and in the care of any person named above;

**b.** A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

(1) 24 and your relative; or

(2) 21 and in your care or the care of a person described in **a.(1)** above; or

**c.** Under Section **II:**

(1) With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person in-

Copyright, Insurance Services Office, Inc., 1999

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 31 of 74

cluded in **a.** or **b.** above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

(2) With respect to a "motor vehicle" to which this policy applies:

(a) Persons while engaged in your employ or that of any person included in **a.** or **b.** above; or

(b) Other persons using the vehicle on an "insured location" with your consent.

Under both Sections **I** and **II,** when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

6. "Insured location" means:

a. The "residence premises";

b. The part of other premises, other structures and grounds used by you as a residence; and

(1) Which is shown in the Declarations; or

(2) Which is acquired by you during the policy period for your use as a residence;

c. Any premises used by you in connection with a premises described in **a.** and **b.** above;

d. Any part of a premises:

(1) Not owned by an "insured"; and

(2) Where an "insured" is temporarily residing;

e. Vacant land, other than farm land, owned by or rented to an "insured";

f. Land owned by or rented to an "insured" on which a one, two, three or four family dwelling is being built as a residence for an "insured";

g. Individual or family cemetery plots or burial vaults of an "insured"; or

h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

7. "Motor vehicle" means:

a. A self-propelled land or amphibious vehicle; or

b. Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a. "Bodily injury"; or

b. "Property damage".

9. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

10. "Residence employee" means:

a. An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

b. One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

11. "Residence premises" means:

a. The one family dwelling where you reside;

b. The two, three or four family dwelling where you reside in at least one of the family units; or

c. That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

**DEDUCTIBLE**

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section **I** that exceeds the deductible amount shown in the Declarations.

**SECTION I - PROPERTY COVERAGES**

**A. Coverage A - Dwelling**

1. We cover:

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 32 of 74

**a.** The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

**b.** Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

**2.** We do not cover land, including land on which the dwelling is located.

## B. Coverage B - Other Structures

**1.** We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

**2.** We do not cover:

**a.** Land, including land on which the other structures are located;

**b.** Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

**c.** Other structures from which any "business" is conducted; or

**d.** Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

**3.** The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage **A**. Use of this coverage does not reduce the Coverage **A** limit of liability.

## C. Coverage C - Personal Property

**1. Covered Property**

We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

**a.** Others while the property is on the part of the "residence premises" occupied by an "insured"; or

**b.** A guest or a "residence employee", while the property is in any residence occupied by an "insured".

**2. Limit For Property At Other Residences**

Our limit of liability for personal property usually located at an "insured's" residence,

other than the "residence premises", is 10% of the limit of liability for Coverage **C**, or $1,000, whichever is greater. However, this limitation does not apply to personal property:

**a.** Moved from the "residence premises" because it is being repaired, renovated or rebuilt and is not fit to live in or store property in; or

**b.** In a newly acquired principal residence for 30 days from the time you begin to move the property there.

**3. Special Limits Of Liability**

The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage **C** limit of liability.

**a.** $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

**b.** $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

**c.** $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

**d.** $1,500 on trailers or semitrailers not used with watercraft of all types.

**e.** $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

**f.** $2,500 for loss by theft of firearms and related equipment.

**g.** $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

**h.** $2,500 on property, on the "residence premises", used primarily for "business" purposes.

**i.** $500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 33 of 74

not apply to loss to electronic apparatus and other property described in Categories **j.** and **k.** below.

j. $1,500 on electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category **j.**

k. $1,500 on electronic apparatus and accessories used primarily for "business" while away from the "residence premises" and not in or upon a "motor vehicle". The apparatus must be equipped to be operated from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category **k.**

### 4. Property Not Covered

We do not cover:

a. Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

b. Animals, birds or fish;

c. "Motor vehicles".

(1) This includes:

(a) Their accessories, equipment and parts; or

(b) Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicle". Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described above.

The exclusion of property described in (a) and (b) above applies only while such property is in or upon the "motor vehicle".

(2) We do cover "motor vehicles" not required to be registered for use on public roads or property which are:

(a) Used solely to service an "insured's" residence; or

(b) Designed to assist the handicapped;

d. Aircraft meaning any contrivance used or designed for flight including any parts whether or not attached to the aircraft.

We do cover model or hobby aircraft not used or designed to carry people or cargo;

e. Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

f. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

g. Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in **E.10.** Landlord's Furnishings under Section **I** - Property Coverages;

h. Property rented or held for rental to others off the "residence premises";

i. "Business" data, including such data stored in:

(1) Books of account, drawings or other paper records; or

(2) Computers and related equipment.

We do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market;

j. Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** - Property Coverages; or

k. Water or steam.

### D. Coverage D - Loss Of Use

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

### 1. Additional Living Expense

If a loss covered under Section **I** makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 34 of 74

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

### 2. Fair Rental Value

If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

### 3. Civil Authority Prohibits Use

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1.** Additional Living Expense and **2.** Fair Rental Value above for no more than two weeks.

### 4. Loss Or Expense Not Covered

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

## E. Additional Coverages

### 1. Debris Removal

a. We will pay your reasonable expense for the removal of:

(1) Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

(2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

b. We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

(1) Your tree(s) felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

(2) A neighbor's tree(s) felled by a Peril Insured Against under Coverage **C;**

provided the tree(s):

(3) Damage(s) a covered structure; or

(4) Does not damage a covered structure, but:

(a) Block(s) a driveway on the "residence premises" which prevent(s) a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

(b) Block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

### 2. Reasonable Repairs

a. We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

b. If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

(1) Increase the limit of liability that applies to the covered property; or

(2) Relieve you of your duties, in case of a loss to covered property, described in **B.4.** under Section I - Conditions.

### 3. Trees, Shrubs And Other Plants

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

a. Fire or Lightning;

b. Explosion;

c. Riot or Civil Commotion;

d. Aircraft;

e. Vehicles not owned or operated by a resident of the "residence premises";

f. Vandalism or Malicious Mischief; or

g. Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

4. **Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

6. **Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

a. We will pay up to $500 for:

(1) The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

(2) Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

(3) Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

(4) Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

This coverage is additional insurance. No deductible applies to this coverage.

b. We do not cover:

(1) Use of a credit card, electronic fund transfer card or access device:

(a) By a resident of your household;

(b) By a person who has been entrusted with either type of card or access device; or

(c) If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

(2) Loss arising out of "business" use or dishonesty of an "insured".

c. If the coverage in **a.** above applies, the following defense provisions also apply:

(1) We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

(2) If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will provide a defense at our expense by counsel of our choice.

(3) We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.(3)** above.

7. **Loss Assessment**

a. We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage **A**, other than:

(1) Earthquake; or

(2) Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 36 of 74

property described above, regardless of the number of assessments.

b. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

c. Paragraph **P. Policy Period** under Section **I** - Conditions does not apply to this coverage.

This coverage is additional insurance.

8. **Collapse**

a. With respect to this Additional Coverage:

(1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

(2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

(3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

(4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

(1) The Perils Insured Against named under Coverage **C**;

(2) Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

(3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

(4) Weight of contents, equipment, animals or people;

(5) Weight of rain which collects on a roof; or

(6) Use of defective material or methods in construction, remodeling or renova-

tion if the collapse occurs during the course of the construction, remodeling or renovation.

c. Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **b.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

d. This coverage does not increase the limit of liability that applies to the damaged covered property.

9. **Glass Or Safety Glazing Material**

a. We cover:

(1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

(2) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

(1) To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

(2) On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in **a.(2)** above. A dwelling being constructed is not considered vacant.

c. This coverage does not increase the limit of liability that applies to the damaged property.

10. **Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage **C**, other than Theft.

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 37 of 74

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

## 11. Ordinance Or Law

a. You may use up to 10% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

c. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and

waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

## 12. Grave Markers

We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage **C.**

This coverage does not increase the limits of liability that apply to the damaged covered property.

## SECTION I - PERILS INSURED AGAINST

### A. Coverage A - Dwelling And Coverage B - Other Structures

1. We insure against risk of direct physical loss to property described in Coverages **A** and **B.**

2. We do not insure, however, for loss:

a. Excluded under Section **I** - Exclusions;

b. Involving collapse, except as provided in **E.8. Collapse** under Section **I** - Property Coverages; or

c. Caused by:

(1) Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

(a) Maintain heat in the building; or

(b) Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision a pluming system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

(2) Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

(a) Fence, pavement, patio or swimming pool;

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 38 of 74

**(b)** Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

**(c)** Retaining wall or bulkhead that does not support all or part of a building or other structure; or

**(d)** Pier, wharf or dock;

**(3)** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(4)** Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

**(5)** Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

**(a)** A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

**(b)** A storm drain, or water, steam or sewer pipes, off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

**(6)** Any of the following:

**(a)** Wear and tear, marring, deterioration;

**(b)** Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

**(c)** Smog, rust or other corrosion, or dry rot;

**(d)** Smoke from agricultural smudging or industrial operations;

**(e)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage **C**.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

**(f)** Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

**(g)** Birds, vermin, rodents, or insects; or

**(h)** Animals owned or kept by an "insured".

**Exception To c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a:

**(i)** Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

**(ii)** Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment.

Section **I** - Exclusion **A.3.** Water Damage, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 39 of 74

not apply to loss by water covered under **c.(5)** and **(6)** above.

Under **2.b.** and **c.** above, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

## B. Coverage C - Personal Property

We insure for direct physical loss to the property described in Coverage **C** caused by any of the following perils unless the loss is excluded in Section I - Exclusions.

### 1. Fire Or Lightning

### 2. Windstorm Or Hail

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

### 3. Explosion

### 4. Riot Or Civil Commotion

### 5. Aircraft

This peril includes self-propelled missiles and spacecraft.

### 6. Vehicles

### 7. Smoke

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

### 8. Vandalism Or Malicious Mischief

### 9. Theft

a. This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

b. This peril does not include loss caused by theft:

(1) Committed by an "insured";

(2) In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

(3) From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

(4) That occurs off the "residence premises" of:

(a) Trailers, semitrailers and campers;

(b) Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

(c) Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 60 days immediately before the loss.

### 10. Falling Objects

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

### 11. Weight Of Ice, Snow Or Sleet

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

### 12. Accidental Discharge Or Overflow Of Water Or Steam

a. This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

b. This peril does not include loss:

(1) To the system or appliance from which the water or steam escaped;

(2) Caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing;

(3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

(4) Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 40 of 74

**c.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**d.** Section **I** - Exclusion **A.3.** Water Damage, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

## 13. Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

## 14. Freezing

**a.** This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

**(1)** Maintain heat in the building; or

**(2)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

**b.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

## 15. Sudden And Accidental Damage From Artificially Generated Electrical Current

This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

## 16. Volcanic Eruption

This peril does not include loss caused by earthquake, land shock waves or tremors.

## SECTION I - EXCLUSIONS

**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

### 1. Ordinance Or Law

Ordinance Or Law means any ordinance or law:

**a.** Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **A.1.a.** does not apply to the amount of coverage that may be provided for in **E.11.** Ordinance Or Law under Section **I** - Property Coverages;

**b.** The requirements of which result in a loss in value to property; or

**c.** Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This Exclusion **A.1.** applies whether or not the property has been physically damaged.

### 2. Earth Movement

Earth Movement means:

**a.** Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

**b.** Landslide, mudslide or mudflow;

**c.** Subsidence or sinkhole; or

**d.** Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

This Exclusion **A.2.** does not apply to loss by theft.

### 3. Water Damage

Water Damage means:

**a.** Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 41 of 74

**b.** Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

**c.** Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

**4. Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

**5. Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**6. War**

War includes the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**7. Nuclear Hazard**

This Exclusion **A.7.** pertains to Nuclear Hazard to the extent set forth in **M.** Nuclear Hazard Clause under Section **I** - Conditions.

**8. Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

**9. Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage **A**, **B** or **C** by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

**B.** We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**1.** Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

**2.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**3.** Faulty, inadequate or defective:

**a.** Planning, zoning, development, surveying, siting;

**b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**c.** Materials used in repair, construction, renovation or remodeling; or

**d.** Maintenance;

of part or all of any property whether on or off the "residence premises".

**SECTION I - CONDITIONS**

**A. Insurable Interest And Limit Of Liability**

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

**1.** To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

**2.** For more than the applicable limit of liability.

**B. Duties After Loss**

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 42 of 74

1. Give prompt notice to us or our agent;

2. Notify the police in case of loss by theft;

3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** - Property Coverages;

4. Protect the property from further damage. If repairs to the property are required, you must:

   a. Make reasonable and necessary repairs to protect the property; and

   b. Keep an accurate record of repair expenses;

5. Cooperate with us in the investigation of a claim;

6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7. As often as we reasonably require:

   a. Show the damaged property;

   b. Provide us with records and documents we request and permit us to make copies; and

   c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;

8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   a. The time and cause of loss;

   b. The interests of all "insureds" and all others in the property involved and all liens on the property;

   c. Other insurance which may cover the loss;

   d. Changes in title or occupancy of the property during the term of the policy;

   e. Specifications of damaged buildings and detailed repair estimates;

   f. The inventory of damaged personal property described in **6.** above;

   g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and

   h. Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund

Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** - Property Coverages, stating the amount and cause of loss.

**C. Loss Settlement**

In this Condition **C.,** the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **E.11.** Ordinance Or Law under Section **I** - Property Coverages. Covered property losses are settled as follows:

1. Property of the following types:

   a. Personal property;

   b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

   c. Structures that are not buildings; and

   d. Grave markers, including mausoleums;

   at actual cash value at the time of loss but not more than the amount required to repair or replace.

2. Buildings covered under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

   a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

      (1) The limit of liability under this policy that applies to the building;

      (2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

      (3) The necessary amount actually spent to repair or replace the damaged building.

      If the building is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the building had been built at the original premises.

   b. If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full re-

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 43 of 74

placement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(1) The actual cash value of that part of the building damaged; or

(2) That proportion of the cost to repair or replace, after application of any deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

**c.** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

(1) Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

(2) Those supports described in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(3) Underground flues, pipes, wiring and drains.

**d.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and **b.** above.

However, if the cost to repair or replace the damage is both:

(1) Less than 5% of the amount of insurance in this policy on the building; and

(2) Less than $2,500;

we will settle the loss as noted in **2.a.** and **b.** above whether or not actual repair or replacement is complete.

**e.** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **C.** Loss Settlement, provided you notify us of your intent to do so within 180 days after the date of loss.

**D. Loss To A Pair Or Set**

In case of loss to a pair or set we may elect to:

**1.** Repair or replace any part to restore the pair or set to its value before the loss; or

**2.** Pay the difference between actual cash value of the property before and after the loss.

**E. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**1.** Pay its own appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

**F. Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

**1.** Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

**2.** A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

**G. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this policy and the action is started within two years after the date of loss.

**H. Our Option**

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

Case 1:16-cv-00996-CCE-JEP Document 1-1 Filed 07/25/16 Page 44 of 74

### I. Loss Payment

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

**1.** Reach an agreement with you;

**2.** There is an entry of a final judgment; or

**3.** There is a filing of an appraisal award with us.

### J. Abandonment Of Property

We need not accept any property abandoned by an "insured".

### K. Mortgage Clause

**1.** If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

**2.** If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

    **a.** Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    **b.** Pays any premium due under this policy on demand if you have neglected to pay the premium; and

    **c.** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **E.** Appraisal, **G.** Suit Against Us and **I.** Loss Payment under Section **I** - Conditions also apply to the mortgagee.

**3.** If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or non-renewal takes effect.

**4.** If we pay the mortgagee for any loss and deny payment to you:

    **a.** We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    **b.** At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

**5.** Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

### L. No Benefit To Bailee

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

### M. Nuclear Hazard Clause

**1.** "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

**2.** Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

**3.** This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

### N. Recovered Property

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

### O. Volcanic Eruption Period

One or more volcanic eruptions that occur within a 72 hour period will be considered as one volcanic eruption.

### P. Policy Period

This policy applies only to loss which occurs during the policy period.

### Q. Concealment Or Fraud

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

**1.** Intentionally concealed or misrepresented any material fact or circumstance;

**2.** Engaged in fraudulent conduct; or

**3.** Made false statements;

relating to this insurance.

### R. Loss Payable Clause

If the Declarations show a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 45 of 74

## SECTION II - LIABILITY COVERAGES

### A. Coverage E - Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

### B. Coverage F - Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured".

## SECTION II - EXCLUSIONS

### A. "Motor Vehicle Liability"

1. Coverages **E** and **F** do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

   a. Is registered for use on public roads or property;

   b. Is not registered for use on public roads or property, but such registration is re-

quired by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

   c. Is being:

      (1) Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

      (2) Rented to others;

      (3) Used to carry persons or cargo for a charge; or

      (4) Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

2. If Exclusion **A.1.** does not apply, there is still no coverage for "motor vehicle liability" unless the "motor vehicle" is:

   a. In dead storage on an "insured location";

   b. Used solely to service an "insured's" residence;

   c. Designed to assist the handicapped and, at the time of an "occurrence", it is:

      (1) Being used to assist a handicapped person; or

      (2) Parked on an "insured location";

   d. Designed for recreational use off public roads and:

      (1) Not owned by an "insured"; or

      (2) Owned by an "insured" provided the "occurrence" takes place on an "insured location" as defined in Definitions **B.6.a., b., d., e.** or **h.;** or

   e. A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

      (1) A golfing facility and is parked or stored there, or being used by an "insured" to:

         (a) Play the game of golf or for other recreational or leisure activity allowed by the facility;

         (b) Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

         (c) Cross public roads at designated points to access other parts of the golfing facility; or

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 46 of 74

**(2)** A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

## B. "Watercraft Liability"

**1.** Coverages **E** and **F** do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

**a.** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

**b.** Rented to others;

**c.** Used to carry persons or cargo for a charge; or

**d.** Used for any "business" purpose.

**2.** If Exclusion **B.1.** does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

**a.** Is stored;

**b.** Is a sailing vessel, with or without auxiliary power, that is:

**(1)** Less than 26 feet in overall length; or

**(2)** 26 feet or more in overall length and not owned by or rented to an "insured"; or

**c.** Is not a sailing vessel and is powered by:

**(1)** An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

**(a)** 50 horsepower or less and not owned by an "insured"; or

**(b)** More than 50 horsepower and not owned by or rented to an "insured"; or

**(2)** One or more outboard engines or motors with:

**(a)** 25 total horsepower or less;

**(b)** More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

**(c)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

**(d)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

**(i)** You declare them at policy inception; or

**(ii)** Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The coverages in **(c)** and **(d)** above apply for the policy period.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

## C. "Aircraft Liability"

This policy does not cover "aircraft liability".

## D. "Hovercraft Liability"

This policy does not cover "hovercraft liability".

## E. Coverage E - Personal Liability And Coverage F - Medical Payments To Others

Coverages **E** and **F** do not apply to the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

**a.** Is of a different kind, quality or degree than initially expected or intended; or

**b.** Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion **E.1.** does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

**2. "Business"**

**a.** "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 47 of 74

b. This Exclusion **E.2.** does not apply to:

   (1) The rental or holding for rental of an "insured location";

      (a) On an occasional basis if used only as a residence;

      (b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

      (c) In part, as an office, school, studio or private garage; and

   (2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

**3. Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

**4. "Insured's" Premises Not An "Insured Location"**

"Bodily injury" or "property damage" arising out of a premises:

a. Owned by an "insured";

b. Rented to an "insured"; or

c. Rented to others by an "insured";

that is not an "insured location";

**5. War**

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

**6. Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

**7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

**8. Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions **A.** "Motor Vehicle Liability", **B.** "Watercraft Liability", **C.** "Aircraft Liability", **D.** "Hovercraft Liability" and **E.4.** "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

**F. Coverage E - Personal Liability**

Coverage **E** does not apply to:

**1.** Liability:

   a. For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in **D.** Loss Assessment under Section **II** - Additional Coverages;

   b. Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

      (1) That directly relate to the ownership, maintenance or use of an "insured location"; or

      (2) Where the liability of others is assumed by you prior to an "occurrence";

      unless excluded in **a.** above or elsewhere in this policy;

**2.** "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

**3.** "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

**4.** "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 48 of 74

a. Workers' compensation law;

b. Non-occupational disability law; or

c. Occupational disease law;

5. "Bodily injury" or "property damage" for which an "insured" under this policy:

   a. Is also an insured under a nuclear energy liability policy issued by the:

      (1) Nuclear Energy Liability Insurance Association;

      (2) Mutual Atomic Energy Liability Underwriters;

      (3) Nuclear Insurance Association of Canada;

      or any of their successors; or

   b. Would be an insured under such a policy but for the exhaustion of its limit of liability; or

6. "Bodily injury" to you or an "insured" as defined under Definitions **5.a.** or **b.**

   This exclusion also applies to any claim made or suit brought against you or an "insured":

   a. To repay; or

   b. Share damages with;

   another person who may be obligated to pay damages because of "bodily injury" to an "insured".

**G. Coverage F - Medical Payments To Others**

Coverage **F** does not apply to "bodily injury":

1. To a "residence employee" if the "bodily injury":

   a. Occurs off the "insured location"; and

   b. Does not arise out of or in the course of the "residence employee's" employment by an "insured";

2. To any person eligible to receive benefits voluntarily provided or required to be provided under any:

   a. Workers' compensation law;

   b. Non-occupational disability law; or

   c. Occupational disease law;

3. From any:

   a. Nuclear reaction;

   b. Nuclear radiation; or

   c. Radioactive contamination;

   all whether controlled or uncontrolled or however caused; or

d. Any consequence of any of these; or

4. To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

**SECTION II - ADDITIONAL COVERAGES**

We cover the following in addition to the limits of liability:

**A. Claim Expenses**

We pay:

1. Expenses we incur and costs taxed against an "insured" in any suit we defend;

2. Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage **E** limit of liability. We need not apply for or furnish any bond;

3. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

4. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

**B. First Aid Expenses**

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

**C. Damage To Property Of Others**

1. We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

2. We will not pay for "property damage":

   a. To the extent of any amount recoverable under Section **I**;

   b. Caused intentionally by an "insured" who is 13 years of age or older;

   c. To property owned by an "insured";

   d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

   e. Arising out of:

      (1) A "business" engaged in by an "insured";

      (2) Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 49 of 74

**(3)** The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

This exclusion **e.(3)** does not apply to a "motor vehicle" that:

**(a)** Is designed for recreational use off public roads;

**(b)** Is not owned by an "insured"; and

**(c)** At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

## D. Loss Assessment

**1.** We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

**a.** "Bodily injury" or "property damage" not excluded from coverage under Section II - Exclusions; or

**b.** Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

**(1)** Is elected by the members of a corporation or association of property owners; and

**(2)** Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

**2.** Paragraph **I.** Policy Period under Section II - Conditions does not apply to this Loss Assessment Coverage.

**3.** Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

**a.** One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

**b.** A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

**4.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

## SECTION II - CONDITIONS

### A. Limit Of Liability

Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage F limit of liability shown in the Declarations.

### B. Severability Of Insurance

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

### C. Duties After "Occurrence"

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

**1.** Give written notice to us or our agent as soon as is practical, which sets forth:

**a.** The identity of the policy and the "named insured" shown in the Declarations;

**b.** Reasonably available information on the time, place and circumstances of the "occurrence"; and

**c.** Names and addresses of any claimants and witnesses;

**2.** Cooperate with us in the investigation, settlement or defense of any claim or suit;

**3.** Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

**4.** At our request, help us:

**a.** To make settlement;

**b.** To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

**c.** With the conduct of suits and attend hearings and trials; and

Copyright, Insurance Services Office, Inc., 1999

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 50 of 74

**d.** To secure and give evidence and obtain the attendance of witnesses;

**5.** With respect to **C.** Damage To Property Of Others under Section **II** - Additional Coverages, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;

**6.** No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**D. Duties Of An Injured Person - Coverage F - Medical Payments To Others**

**1.** The injured person or someone acting for the injured person will:

    **a.** Give us written proof of claim, under oath if required, as soon as is practical; and

    **b.** Authorize us to obtain copies of medical reports and records.

**2.** The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E. Payment Of Claim - Coverage F - Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

**1.** No action can be brought against us unless there has been full compliance with all of the terms under this Section **II.**

**2.** No one will have the right to join us as a party to any action against an "insured".

**3.** Also, no action with respect to Coverage **E** can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

**I. Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

**1.** Intentionally concealed or misrepresented any material fact or circumstance;

**2.** Engaged in fraudulent conduct; or

**3.** Made false statements;

relating to this insurance.

**SECTIONS I AND II - CONDITIONS**

**A. Liberalization Clause**

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

**1.** A subsequent edition of this policy; or

**2.** An amendatory endorsement.

**B. Waiver Or Change Of Policy Provisions**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**C. Cancellation**

**1.** You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

**2.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

    **a.** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

    **b.** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

Case 1:16-cv-00996-CCE-JEP  Document 1-1  Filed 07/25/16  Page 51 of 74

c. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

   (1) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

   (2) If the risk has changed substantially since the policy was issued.

   This can be done by letting you know at least 30 days before the date cancellation takes effect.

d. When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

3. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

4. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**D. Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**E. Assignment**

Assignment of this policy will not be valid unless we give our written consent.

**F. Subrogation**

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage F or Paragraph **C.** Damage To Property Of Others under Section II - Additional Coverages.

**G. Death**

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

1. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

2. "Insured" includes:

   a. An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

   b. With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 52 of 74

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE

### ALL FORMS EXCEPT HO 00 04 AND HO 00 06

### SCHEDULE*

Windstorm Or Hail Deductible Percentage Amount:

\* Entry may be left blank if shown elsewhere in this policy for this coverage.

**DEDUCTIBLE**

The following special deductible is added to the policy:

With respect to the peril of Windstorm Or Hail, we will pay only that part of the total of all loss payable under Section I that exceeds the windstorm or hail percentage deductible.

The dollar amount of the windstorm or hail deductible is determined by multiplying the Coverage **A** limit of liability shown in the Declarations by the deductible percentage amount shown in the Schedule above.

No other deductible in the policy applies to loss caused by windstorm or hail.

All other provisions of this policy apply.

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 53 of 74

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WATER BACK UP AND SUMP DISCHARGE OR OVERFLOW – NORTH CAROLINA

### SCHEDULE

| | |
|---|---|
| **Limit Of Liability:** | $ |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

## A. Coverage

We will pay, up to the limit of liability shown in the Schedule, for direct physical loss, not caused by the negligence of an "insured", to property covered under Section **I** caused by water, or water-borne material, which:

1. Backs up through sewers or drains; or

2. Overflows or is discharged from a:

   a. Sump, sump pump; or

   b. Related equipment;

   even if such overflow or discharge results from mechanical breakdown. This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown.

This endorsement does not increase the amount of insurance that applies to the covered property.

## B. Section I – Perils Insured Against

With respect to the coverage described in **A.** above, Paragraphs:

**A.2.c.(6)(b)** in Form **HO 00 03;**

**A.2.e.(2)** in Form **HO 00 05;**

**2.j.(2)** in Endorsement **HO 32 95;**

**3.j.(2)** in Endorsement **HO 32 35;** and

**2.c.(6)(b)** in Endorsement **HO 32 34;**

are deleted and replaced by the following:

Latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

## C. Special Deductible

The following replaces any other deductible provision in this policy with respect to loss covered under this endorsement.

We will pay only that part of the total of all loss payable under Section **I** that exceeds $250. No other deductible applies to this coverage. This deductible does not apply with respect to Coverage **D** – Loss of Use.

## D. Exclusion

The **Water Damage** Exclusion is replaced by the following:

**Water**

This means:

1. Flood, including but not limited to flash flood, surface water, waves, including tidal wave and tsunami, seiche, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

2. Water which:

   a. Backs up through sewers or drains; or

   b. Overflows or is otherwise discharged from a sump, sump pump or related equipment;

   as a direct or indirect result of flood;

3. Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

4. Waterborne material carried or otherwise moved by any of the water referred to in **D.1.** through **D.3.** of this Exclusion.

**HO 04 84 01 09**       Copyright, North Carolina Rate Bureau, Inc., 2008
**Page 1 of 2**
Includes copyrighted material of
Insurance Services Office, Inc., with its permission.

This Exclusion applies regardless of whether any of the above, in **D.1.** through **D.4.**, is caused by an act of nature, an act of man or is otherwise caused.

This Exclusion applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system whether natural, man-made or is otherwise made.

However, direct loss by fire, explosion or theft resulting from any of the above, in **D.1.** through **D.4.**, is covered.

All other provisions of this policy apply.

Copyright, North Carolina Rate Bureau, Inc., 2008
Includes copyrighted material of
Insurance Services Office, Inc., with its permission.

**HO 04 84 01 09**

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERSONAL PROPERTY REPLACEMENT COST LOSS SETTLEMENT

### A. Eligible Property

1. Covered losses to the following property are settled at replacement cost at the time of the loss:

   a. Coverage **C**; and

   b. If covered in this policy:

      (1) Awnings, outdoor antennas and outdoor equipment; and

      (2) Carpeting and household appliances;

      whether or not attached to buildings.

2. This method of loss settlement will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement:

   a. Jewelry;

   b. Furs and garments:

      (1) Trimmed with fur; or

      (2) Consisting principally of fur;

   c. Cameras, projection machines, films and related articles of equipment;

   d. Musical equipment and related articles of equipment;

   e. Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding:

      (1) Pens or pencils;

      (2) Flasks;

      (2) Smoking implements; or

      (3) Jewelry; and

   f. Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

   Personal Property Replacement Cost loss settlement will not apply to other classes of property separately described and specifically insured.

### B. Ineligible Property

Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

1. Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced;

2. Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

3. Articles not maintained in good or workable condition.

4. Articles that are outdated or obsolete and are stored or not being used.

### C. Replacement Cost Loss Settlement Condition

The following loss settlement condition applies to all property described in **A.** above:

1. We will pay no more than the least of the following amounts:

   a. Replacement cost at the time of loss without deduction for depreciation;

   b. The full cost of repair at the time of loss;

   c. The limit of liability that applies to Coverage **C**, if applicable;

   d. Any applicable special limits of liability stated in this policy; or

   e. For loss to any item described in **A.2.a. - f.** above, the limit of liability that applies to the item.

2. If the cost to repair or replace the property described in **A.** above is more than $500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete.

3. You may make a claim for loss on an actual cash value basis and then make claim for any additional liability in accordance with this endorsement provided you notify us of your intent to do so within 180 days after the date of loss.

All other provisions of this policy apply.

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 56 of 74

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SPOUSE ACCESS – NORTH CAROLINA

**SECTIONS I AND II – CONDITIONS**

**The following condition is added:**

**SPOUSE ACCESS**

The named insured and we agree that the named insured and resident spouse are customers for purposes of state and federal privacy laws. The resident spouse will have access to the same information available to the named insured.

The named insured may notify us that he/she no longer agrees that the resident spouse shall be treated as a customer for purposes of state and federal privacy laws, and we will not permit the resident spouse to access policy information.

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 57 of 74

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SPECIFIED ADDITIONAL AMOUNT OF INSURANCE FOR COVERAGE A – DWELLING – NORTH CAROLINA
### FORMS HO 00 02 AND HO 00 03 AND HO 00 05 ONLY

**(APPLIES ONLY WHEN LOSS TO BUILDING INSURED UNDER COVERAGE A EXCEEDS THE COVERAGE A LIMIT OF LIABILITY SHOWN IN THE DECLARATIONS)**

### SCHEDULE*

| |
|---|
| Additional Amount Of Insurance: |
| _____ % |
| The Additional Amount Of Insurance is determined by multiplying the Coverage **A** limit of liability shown in the Declarations by the percentage amount shown above. |
| *Entry may be left blank if shown elsewhere in this policy for this coverage. |

To the extent that coverage is provided, we agree to provide an additional amount of insurance in accordance with the following provisions:

**A.** If you have:

  **1.** Allowed us to adjust the Coverage **A** limit of liability and the premium in accordance with:

    **a.** The property evaluations we make; and

    **b.** Any increases in inflation; and

  **2.** Notified us, within 30 days of completion, of any improvements, alterations or additions to the building insured under Coverage **A** which increase the replacement cost of the building by 5% or more;

the provisions of this endorsement will apply after a loss, provided you elect to repair or replace the damaged building.

**B.** If there is a loss to the building insured under Coverage **A** that exceeds the Coverage **A** limit of liability shown in the Declarations, for the purpose of settling that loss only:

  **1.** We will provide an additional amount of insurance, up to the amount described in the Schedule above; and

  **2.** Section I – Condition **C.** Loss Settlement Paragraph **2.** is deleted and replaced by Paragraphs **2., 3.,** and **4.** as follows:

  **2.** The building insured under Coverage **A** at replacement cost without deduction for depreciation. We will pay no more than the smallest of the following amounts:

    **a.** The replacement cost of that part of the building damaged with material of like kind and quality and for like use;

    **b.** The necessary amount actually spent to repair or replace the damaged building on the "residence premises" or some other premises within the state of North Carolina; or

    **c.** The limit of liability under this policy that applies to the building, plus any additional amount provided by this endorsement.

  **3.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.

  **4.** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to the building on an actual cash value basis. You may then make claim for any additional liability on a replacement cost basis, provided you notify us of your intent to do so within 180 days after the date of loss.

All other provisions of this policy apply.

Copyright, North Carolina Rate Bureau, 2003
**Page 1 of 1**
Copyright, ISO Properties, Inc., 2003

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SPECIAL PROVISIONS – NORTH CAROLINA

**DEFINITIONS**

Definition **B.3.** is replaced by the following:

   **3.** "Business" includes any full- or part-time activity of any kind engaged in for economic gain, including the use of any part of any premises for such purposes.

The following definition is added to Paragraph **B.** in all forms:

   **12.** "Fungi"

     **a.** "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by fungi.

     **b.** Under Section **II**, this does not include any fungi that are, are on, or are contained in any good or product intended for consumption.

**SECTION I – PROPERTY COVERAGES**

**C. Coverage C – Personal Property**

   **3. Special Limits Of Liability**

     Paragraphs **f.** and **g.** are deleted in all forms except **HO 00 08**, and deleted in Endorsements **HO 32 95** and **HO 32 35** when made part of Forms **HO 00 04** and **HO 00 06**, respectively. Paragraphs **f.** and **g.** in those forms are replaced by the following:

     **f.** 10% of the Coverage **C** limit, subject to a maximum of $10,000, for loss by theft* of firearms and related equipment.

     **g.** 25% of the Coverage **C** limit, subject to a maximum of $10,000, for loss by theft* of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinumplated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

   \* In Form **HO 00 05** and Endorsements **HO 32 95** and **HO 32 35**, theft includes misplacing or losing.

   **4. Property Not Covered**

     Paragraph **c.(2)(a)** is replaced by the following:

       **(a)** Used to service an "insured's" residence; or

**E. Additional Coverages**

In all forms except **HO 00 06** and **HO 00 08**:

   **1. Debris Removal** is replaced by the following:

   **1. Debris Removal**

     **a.** We will pay your reasonable expense for the removal of:

       **(1)** Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

       **(2)** Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

     This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

     **b.** We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

       **(1)** Your tree(s) felled by the peril of Windstorm or Hail; or Weight of Ice, Snow or Sleet; or

       **(2)** A neighbor's tree(s) felled by a Peril Insured Against under Coverage **C**;

     provided the tree(s):

       **(3)** Damages a covered structure; or

       **(4)** Does not damage a covered structure; but:

         **(a)** Blocks a driveway on the "residence premises" which prevents a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

Copyright, North Carolina Rate Bureau, Inc., 2009
**Page 1 of 6**
Includes copyrighted material of
Insurance Services Office, Inc., with its permission.

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 59 of 74

(b) Blocks a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

This coverage is additional insurance.

In Form **HO 00 06**:

1. **Debris Removal** is replaced by the following:

1. **Debris Removal**

   a. We will pay your reasonable expense for the removal of:

      (1) Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

      (2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

      This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

   b. We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

      (1) A tree(s) you solely own felled by the peril of Windstorm or Hail; or Weight of Ice, Snow or Sleet; or

      (2) A neighbor's tree(s) felled by a Peril Insured Against under Coverage **C**;

      provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss, regardless of the number of fallen trees.

      This coverage is additional insurance.

In Form **HO 00 08**:

1. **Debris Removal** is replaced by the following:

1. **Debris Removal**

   a. We will pay your reasonable expense for the removal of:

      (1) Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

      (2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

      This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

   b. We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

      (1) Your tree(s) felled by the peril of Windstorm or Hail; or

      (2) A neighbor's tree(s) felled by a Peril Insured Against under Coverage **C**;

      provided the tree(s):

      (3) Damages a covered structure; or

      (4) Does not damage a covered structure; but:

         (a) Blocks a driveway on the "residence premises" which prevents a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

         (b) Blocks a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

      The $500 limit is the most we will pay in any one loss, regardless of the number of fallen trees.

      This coverage is additional insurance.

10. **Landlord's Furnishings**

    k. **Accidental Discharge Or Overflow Of Water Or Steam**

       Paragraph **(2)(d)** is replaced by the following in Form **HO 00 05**:

          (d) Caused by constant or repeated seepage or leakage of water or the presence or condensation of

Copyright, North Carolina Rate Bureau, Inc., 2009
Includes copyrighted material of
Insurance Services Office, Inc., with its permission.

HO 32 32 06 10

Case 1:16-cv-00996-CCE-JEP Document 1-1 Filed 07/25/16 Page 60 of 74

humidity, moisture or vapor, over a period of weeks, months or years; or

The following Additional Coverage is added to all forms except **HO 00 04**:

### 13. "Fungi", Wet Or Dry Rot, Or Bacteria

a. We will pay up to a total of $5,000 for:

(1) Direct physical loss to property covered under Section I – Coverage **A** – Dwelling, Coverage **B** – Other Structures and Coverage **C** – Personal Property caused by, resulting from, or consisting of "fungi", wet or dry rot, or bacteria if the direct result of a Peril Insured Against; and

(2) The necessary increase in costs which you incur to maintain your normal standard of living when the "residence premises" is uninhabitable due to a loss caused by, resulting from, or consisting of "fungi", wet or dry rot, or bacteria which is the direct result of a Peril Insured Against.

The coverage provided above is the only coverage under Section I – Coverage **A** – Dwelling, Coverage **B** – Other Structures, Coverage **C** – Personal Property and Coverage **D** – Loss Of Use for loss caused by, resulting from, or consisting of "fungi", wet or dry rot, or bacteria caused directly or indirectly regardless of any other cause or event contributing concurrently or in any sequence.

b. The amount in **a.** above is the most we will pay for the cost:

(1) To remove "fungi", wet or dry rot, or bacteria from covered property;

(2) To tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

(3) Of any testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is

the presence of "fungi", wet or dry rot, or bacteria.

c. The coverage provided above applies only when such loss or costs are the result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and protect the property from further damage at or after the time of the occurrence of that Peril Insured Against.

d. If there is covered loss to covered property, not caused, in whole or in part, by "fungi", wet or dry rot, or bacteria, loss payment will not be limited by the terms of this Additional Coverage, except to the extent that "fungi", wet or dry rot, or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Additional Coverage.

This is additional insurance and is the most we will pay for the total of all loss or costs payable under the Additional Coverage regardless of the number of locations insured or the number of claims made. No deductible applies to this coverage.

(This is Additional Coverage **12.** in Form **HO 00 06** and Additional Coverage **9.** in Form **HO 00 08**.)

## SECTION I – PERILS INSURED AGAINST

In Form **HO 00 03**:

### A. Coverage A – Dwelling And Coverage B – Other Structures

Paragraph **2.c.(5)** is replaced by the following:

(5) Constant or repeated discharge, seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years; or

Paragraph **2.c.(6)(c)** is deleted and replaced by the following:

(c) Smog, rust or other corrosion;

### B. Coverage C – Personal Property

### 12. Accidental Discharge Or Overflow Of Water Or Steam

Paragraph **b.(4)** is replaced by the following:

(4) Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years.

Copyright, North Carolina Rate Bureau, Inc., 2009
Includes copyrighted material of
Insurance Services Office, Inc., with its permission.

In Form **HO 00 05**:

Paragraph **A.2.d.** is replaced by the following:

    **d.** Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years; or

Paragraph **A.2.e.(3)** is replaced by the following:

    **(3)** Smog, rust or other corrosion;

In Forms **HO 00 02**, **HO 00 04** and **HO 00 06**:

  **12. Accidental Discharge Or Overflow Of Water Or Steam**

    Paragraph **b.(5)** in Forms **HO 00 02** and **HO 00 06** and Paragraph **b.(4)** in Form **HO 00 04** are replaced by the following:

    **(5)** To a building caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years.

**SECTION I – EXCLUSIONS**

In all forms except **HO 00 05**:

  **3. Water Damage** is replaced by the following:

  **3. Water**

    This means:

    **a.** Flood, including but not limited to flash flood, surface water, waves, including tidal wave and tsunami, seiche, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

    **b.** Water which:

      **(1)** Backs up through sewers or drains; or

      **(2)** Overflows or is otherwise discharged from a sump, sump pump or related equipment;

    **c.** Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

    **d.** Waterborne material carried or otherwise moved by any of the water referred to in **3.a.** through **3.c.** of this exclusion.

    This Exclusion **(3.)** applies regardless of whether any of the above, in **3.a.** through

**3.d.**, is caused by an act of nature, an act of man or is otherwise caused.

    This Exclusion **(3)** applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system whether natural, man-made or is otherwise made.

    However, direct loss by fire, explosion or theft resulting from any of the above, in **3.a.** through **3.d.**, is covered.

(This is Paragraph **A.3.** in Form **HO 00 03**.)

In Form **HO 00 05**:

Paragraph **A.3.** is replaced by the following:

  **3. Water**

    This means:

    **a.** Flood, including but not limited to flash flood, surface water, waves, including tidal wave and tsunami, seiche, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

    **b.** Water which:

      **(1)** Backs up through sewers or drains; or

      **(2)** Overflows or is otherwise discharged from a sump, sump pump or related equipment;

    **c.** Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

    **d.** Waterborne material carried or otherwise moved by any of the water referred to in **3.a.** through **3.c.** of this exclusion.

    This Exclusion **(A.3.)** applies regardless of whether any of the above, in **A.3.a.** through **A.3.d.**, is caused by an act of nature, an act of man or is otherwise caused.

    This Exclusion **(A.3.)** applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system whether natural, man-made or is otherwise made.

Copyright, North Carolina Rate Bureau, Inc., 2009
Includes copyrighted material of
Insurance Services Office, Inc., with its permission.

HO 32 32 06 10

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 62 of 74

However, direct loss by fire, explosion or theft resulting from any of the above, in **A.3.a.** through **A.3.d.**, is covered.

Damage to property described in Coverage **C** away from a premises or location owned, rented, occupied or controlled by an "insured" resulting from any of the above, in **A.3.a.** through **A.3.d.**, is covered.

Damage to property described in Coverage **C** on a premises or location owned, rented, occupied or controlled by an "insured", resulting from any of the above, in **A.3.a.** through **A.3.d.**, is excluded even if weather conditions contribute in any way to produce the loss.

8. **Intentional Loss** is replaced by the following:

   8. **Intentional Loss**

      Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

      This exclusion only applies to an "insured" who commits or conspires to commit an act with the intent to cause a loss.

   (This is Paragraph **A.8.** in Forms **HO 00 03** and **HO 00 05**.)

The following exclusion is added:

   10. **"Fungi", Wet Or Dry Rot, Or Bacteria**

       "Fungi", Wet Or Dry Rot, Or Bacteria means the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria other than as provided in Additional Coverage **13.** "Fungi", Wet Or Dry Rot, Or Bacteria.

       (This is Exclusion **A.10.** in Forms **HO 00 03** and **HO 00 05**.)

## SECTION I – CONDITIONS

**B. Duties After Loss**

The following is added to the end of Paragraph **8.**:

However, if a state of disaster is proclaimed or declared for the State of North Carolina or for an area within the state in accordance with North Carolina law and the covered property that has sustained loss is located within the geographic area designated in the disaster proclamation or declaration, this 60-day period shall not commence until the expiration of the disaster proclamation or declaration, including all renewals of the proclamation or 45 days, whichever is later.

**C. Loss Settlement**

In Forms **HO 00 02, HO 00 03** and **HO 00 05**, Subparagraph **2.a.** is replaced by the following:

2. Buildings covered under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

   a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

      (1) The limit of liability under this policy that applies to the building;

      (2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

      (3) The necessary amount actually spent to repair or replace the damaged building on the "residence premises" or some other premises within the State of North Carolina.

**E. Appraisal** is replaced by the following:

**E. Appraisal**

If you and we fail to agree on the value or amount of any item or loss, either may demand an appraisal of such item or loss. In this event, each party will choose a competent and disinterested appraiser within 20 days after receiving a written request from the other. The two appraisers will choose a competent and impartial umpire. If they cannot agree upon an umpire within 15 days, you or we may request that a choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss. Each party will:

1. Pay its own appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

In no event will an appraisal be used for the purpose of interpreting any policy provision, determining causation or determining whether

Copyright, North Carolina Rate Bureau, Inc., 2009
Includes copyrighted material of
Insurance Services Office, Inc., with its permission.

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 63 of 74

any item or loss is covered under this policy. If there is an appraisal, we still retain the right to deny the claim.

**G. Suit Against Us** is replaced by the following:

**G. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this policy and the action is started within three years after the date of loss.

**I. Loss Payment** is replaced by the following:

**I. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. We will pay within 60 days after the amount is finally determined.

This amount may be determined by:

    **a.** Reaching an agreement with you;

    **b.** Entry of a final judgment; or

    **c.** The filing of an appraisal award with us.

## SECTION II – EXCLUSIONS

**A. "Motor Vehicle Liability"**

Paragraph **2.b.** is replaced in all forms by the following:

    **b.** Used to service an "insured's" residence;

**E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Paragraph **1. Expected Or Intended Injury** is replaced in all forms by the following:

    **1. Expected Or Intended Injury**

"Bodily injury" or "property damage" which is intended by or which may reasonably be expected to result from the intentional acts or omissions or criminal acts or omissions of one or more "insured" persons. This exclusion applies even if:

    **a.** The "insured" persons lack the mental capacity to govern their own conduct;

    **b.** The "bodily injury" or "property damage" is of a different kind, quality or degree than intended or reasonably expected; or

    **c.** The "bodily injury" or "property damage" is sustained by a different person or entity than intended or reasonably expected.

This exclusion applies regardless of whether or not an "insured" person is actually charged with, or convicted of, a crime.

Paragraph **2. "Business"** is replaced by the following:

**2. "Business"**

    **a.** "Bodily injury" or "property damage" arising out of or in connection with a "business" engaged in by an "insured".

    This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

    **b.** This Exclusion **E.2.** does not apply to:

      **(1)** The rental or holding for rental of an "insured location":

        **(a)** On an occasional basis if used only as a residence;

        **(b)** In part, for use only as a residence, unless a single-family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

        **(c)** In part, as an office, school, studio or private garage; and

      **(2)** An insured minor involved in part-time, self-employed "business" pursuits normally undertaken by minors, unless the minor is employed by a "business". A minor means a person who has not attained his or her 19th birthday (or age 23 if a full-time student);

The following exclusion is added:

**9. "Fungi", Wet Or Dry Rot, Or Bacteria**

"Bodily injury" or "property damage" arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of or presence of any "fungi", wet or dry rot, or bacteria.

## SECTIONS I AND II – CONDITIONS

The following condition is added:

**H. Choice Of Law**

This policy is issued in accordance with the laws of North Carolina and covers property or risks principally located in North Carolina. Any and all claims or disputes in any way related to this policy shall be governed by the laws of North Carolina.

All other provisions of this policy apply.

Copyright, North Carolina Rate Bureau, Inc., 2009
Includes copyrighted material of
Insurance Services Office, Inc., with its permission.

**HO 32 32 06 10**

## INSERT – NORTH CAROLINA

This policy is a legal contract between you and us. The Property Policy is:

- Designed for your easy reference;
- Simplified, to make it more understandable; and
- Arranged to better display the available coverages.

### READ YOUR POLICY CAREFULLY

Copyright, North Carolina Rate Bureau, 2003
**Page 1 of 1**
Copyright, ISO Properties, Inc., 2003

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 65 of 74

THIS ENDORSEMENT DOES NOT CONSTITUTE A REDUCTION OF COVERAGE.

## NO SECTION II – LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS
## LIMITED SECTION I – PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS – NORTH CAROLINA

**A.** If an "insured" regularly provides home day care services to a person or persons other than "insureds" for economic gain, that enterprise is a "business". Mutual exchange of home day care services, however, is not considered economic gain. The rendering of home day care services by an "insured" to a relative of an "insured" is not considered a "business".

**B.** Therefore, with respect to a home day care enterprise which is considered to be a "business", this policy:

  **1.** Does not provide:

    **a.** Section **II** coverages. This is because a "business" of an "insured" is excluded under **E.2.** of Section **II** – Exclusions;

    **b.** Coverage, under Section **I,** for other structures from which any "business" is conducted; and

  **2.** Limits Section **I** coverage, under Coverage **C** — Special Limits Of Liability, for "business" property:

    **a.** On the "residence premises" for the home day care "business" to $2,500. This is because Category **h. (e.** in Form **HO 00 08)** imposes that limit on "business" property on the "residence premises";

    **b.** Away from the "residence premises" for the home day care "business" to $500. This is because Category **i. (f.** in Form **HO 00 08)** imposes that limit on "business" property away from the "residence premises". Category **i.** does not apply to property described in Categories **j.** and **k. (g.** and **h.** respectively in Form **HO 00 08).**

Copyright, North Carolina Rate Bureau, 2003
**Page 1 of 1**
Copyright, ISO Properties, Inc., 2003

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 66 of 74

# FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

 © ISO Properties, Inc., 2003

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 67 of 74

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© ISO Properties, Inc., 2004

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 68 of 74



## UNITED PROPERTY AND CASUALTY INSURANCE COMPANY
## PRIVACY NOTICE

Protecting the privacy and confidentiality of information about our customers is very important to us. While information is the cornerstone of our ability to provide superior insurance products, our most important asset is our customers' trust. Accordingly, we limit the collection and use of customer information to the minimum we require in delivering superior products and services. This privacy policy includes examples of the types of nonpublic personal information we collect and the kinds of companies with whom we may share such information. **You do not need to do anything in response to this notice. This notice is merely to inform you about how we safeguard your information.**

### Information We Collect

We know that you expect us to conduct and process your business in a manner that is both accurate and efficient. To do so, we gather information about you that is pertinent to the underwriting process, such as:
- your name, address, telephone number, social security number, age, and employer;
- prior insurance coverage, claims history, premiums, and payment history;
- information from consumer reporting agencies, public records, and data collection agencies.

### Information We May Disclose

We do not disclose any nonpublic personal information about our customers or former customers to anyone, except for information that we may be required by law to disclose. We also may disclose information in order to provide customer service or administer your account. For example, we may use another party to perform services for us, such as providing customer assistance, handling claims, protecting against fraud, and maintaining or developing software for us. We also may disclose information in response to requests from law enforcement agencies or state insurance authorities.

### Security

To safeguard your nonpublic personal information, we limit access to our customers' nonpublic personal information to only those employees who need access to the information to perform their job functions. Additionally, we insist that the distributors and other companies that perform services for us limit access to your personal information to authorized employees and agents, and maintain appropriate administrative, physical, electronic and procedural safeguards.

Case 1:16-cv-00996-CCE-JEP   Document 1-1   Filed 07/25/16   Page 69 of 74



**UNITED PROPERTY & CASUALTY INSURANCE COMPANY**

# HOMEOWNER POLICY

### PO BOX 51149
### SARASOTA, FL 34232-0330

#### TELEPHONE
#### 1-800-295-8016

## \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*IMPORTANT NOTICE\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THIS POLICY DOES NOT INCLUDE INSURANCE PROTECTION AGAINST FLOOD LOSSES.

FLOOD COVERAGE IS AVAILABLE THROUGH AGENTS WHO WRITE FLOOD INSURANCE.

IF YOU SHOULD HAVE ANY QUESTIONS REGARDING THIS IMPORTANT PROTECTION, PLEASE CONTACT YOUR AGENT.

### NORTH CAROLINA

Page 1 of 2

UPC HO 207 NC

ed. 03/13

This policy is issued on behalf of United Property & Casualty Insurance Company and by acceptance of this policy you agree:

1. That the statements in the Declaration are your representation;

2. That this policy is issued in reliance upon the truth of those representations; and

3. That this policy embodies all agreements existing between you and United Property & Casualty Insurance Company or any of our Producers relating to this policy.

**IN WITNESS WHEREOF**, the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

*John Forney*

Chief Executive Officer

**United Property & Casualty Insurance Company**

Page 2 of 2

UPC HO 207 NC

ed. 03/13



# CONSENT TO RATE - NORTH CAROLINA

## HOMEOWNERS COVERAGE

Policyholder Name(s): PAULA BULLOCK
Mailing Address: 732 OSMOND RD
SEMORA NC 27343

Agency Name: COACHES CASUALTY INS OF NC INC
Agency Address: DBA LACY WEST INSURANCE
PO BOX 2138
ELIZABETHTOWN NC 28337

Policy Number: UNH 0063322 00 32
Effective Date: 02/04/2014
Policy Period: 02/04/2014 - 02/04/2015

Location of Insured Residence Premises:
732 OSMOND RD
SEMORA NC 27343

Coverage Limits
Dwelling: $425,000.00
Other Structures: $42,500.00
Personal Property: $212,500.00
Loss of Use: $85,000.00
Personal Liability: $300,000.00
Medical Payments to Others: $1,000.00
Other Perils Deductible: $2,500
Wind/Hail Deductible: 1% / $4,250
Named Storm Deductible:

Policy Type: HO3

North Carolina Rate Bureau (NCRB) Premium: $1,712.00    Percent Of NCRB Premium: 107 %
UPC Proposed Policy Premium: $1,826.00

The premium proposed by UPC does not exceed 250% of the North Carolina Rate Bureau premium and, therefore, is presumed reasonable.

I/we acknowledge that coverage may be available through the North Carolina Joint Underwriting Association (FAIR Plan) or the North Carolina Insurance Underwriting Association (Beach Plan).

By signature below, I/we consent to the rate offered by UPC. I/we understand that this rate differs from the North Carolina Rate Bureau manual rates. This signed consent is applicable to future policy renewals, replacements, endorsements, reinstatements and/or changes.

Insured Signature: _____    Date: _____

Co-Insured Signature: _____    Date: _____

Please sign and return this form to:
UPC - NC CTR
P.O. Box 51149
Sarasota, FL 34232

UPC NC CTR HO 04 13

Page 1 of 1

# PARTIAL DECLARATION OF APPRAISAL

State of North Carolina, Caswell County

Subject: Paula K. Bullock v. UPC Insurance
Policy #:     UNH0063322
Claim #:     2015NC003473
Date of Loss:     1/10/2015
Location of Loss:     The dwelling at 732 Osmond Rd, Semora, NC 27343

## PARTIAL APPRAISAL AWARD

*We, the undersigned, pursuant to the within appointment, certify that we have duly,
conscientiously and impartially performed the duties assigned to us on the subject matter,
including the revision and adjustment of documents, have appraised, determined and do
hereby render the following partial award:*

|  | Replacement Cost | Depreciation | Actual Cash Value |
|---|---|---|---|
| Building Value | $136,426.72 | $0.00 | $136,426.72 |
| Amount of Loss to Dwelling | $130,330.63 | $7,931.61 | $122,399.02 |
| Additional Living Expense | $21,000.00 | $0.00 | $21,000.00 |
| Personal Property | Amount Pending | Amount Pending | Amount Pending |
| Partial Amount of Loss | $151,330.63 | $7,931.61 | $143,399.02 |

*Neil S Watts*

Carrier's Appraiser: Neil S Watts

Date  11/9/15

Date _____

Insured's Appraiser: Max Christenbury

Date _____

Umpire: Ray McGee

**Note: All Prior Payment(s) and Deductible(s) Should be Subtracted
from the Above Amounts**



# DECLARATION OF APPRAISAL

State of North Carolina, Caswell County

Subject:  Paula K. Bullock v. UPC Insurance
     Policy #:        UNH0063322
     Claim #:        2015NC003473
     Date of Loss:    1/10/2015
     Location of Loss:  The dwelling at 732 Osmond Rd, Semora, NC 27343

## APPRAISAL AWARD

*We, the undersigned, pursuant to the within appointment, certify that we have duly, conscientiously and impartially performed the duties assigned to us on the subject matter, including the revision and adjustment of documents, have appraised, determined and do hereby render the following partial award:*

| | Replacement Cost | Depreciation | Actual Cash Value |
|---|---|---|---|
| Building Value | $136,426.72 | $0.00 | $136,426.72 |
| Amount of Loss to Dwelling | $130,330.63 | $7,931.61 | $122,399.02 |
| Additional Living Expense | $21,000.00 | $0.00 | $21,000.00 |
| Personal Property | $51,989.79 | $3,787.03 | $48,402.76 |
| Partial Amount of Loss | $203,320.42 | $11,718.64 | $191,801.78 |

Carrier's Appraiser: Neil S Watts        Date 1/4/2016

Insured's Appraiser: Max Christenbury        Date 1/4/2016

Umpire: Ray McGee        Date

**Note:** **All Prior Payment(s) and Deductible(s) Should be Subtracted from the Above Amounts**